UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Joe Hand Promotions, Inc.,<br><br>               Plaintiff,<br>vs.<br><br>AFSB, LLC d/b/a Break Time Sports Bar and Grill, and James Blanding,<br><br>               Defendants. | Civil Action No.: 8:14-cv-02676-BHH<br><br>**Opinion and Order** |

This matter is before the Court on the plaintiff's motion for default judgment (ECF No. 11). For the reasons set forth below, the Court grants the motion and awards damages as described herein.

## **BACKGROUND**

The plaintiff, Joe Hand Promotions, Inc., filed a complaint on July 1, 2014, advancing causes of action pursuant to 47 U.S.C. § 553 for the unauthorized reception of cable service and 47 U.S.C. § 605 for the unauthorized publication or use of communications.[1] The defendants, AFSB, LLC, d/b/a Break Time Sports Bar and Grill and James Blanding, were served with the complaint as evinced by the affidavits of Lester Franzen of Southern Pride Process, the process server for the plaintiff. (*See* ECF No. 6.) The defendants failed to timely file an answer or otherwise respond to the plaintiff's complaint. Thus, upon the plaintiff's request, the Clerk of Court entered default on August 26, 2014. The present motion for default judgment followed.

---

[1] The plaintiff also advances a state-law claim for conversion.

A review of the complaint, the motion for default judgment, and other supporting documents, reveals the following facts, which are accepted as true in light of the defendants' default. *See DIRECTV, Inc. v. Rawlins,* 523 F.3d 318, 322 n. 1 (4th Cir. 2009) (accepting plaintiffs allegations against defaulting defendant as true, noting a defaulting defendant "admits the plaintiffs well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established") (quoting *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001)).

The plaintiff had exclusive, nationwide commercial television distribution rights to *"Ultimate Fighting Championship 148: Anderson Silva v. Chael Sonnen"*, which included all under-card bouts and commentary, and which aired on July 7, 2012 (the "Program"). As alleged in cursory fashion in the plaintiff's complaint and set forth in greater detail in the affidavit (ECF No. 11-4) of the plaintiff's investigator, Donna Persinger, on the night of July 7, 2012, the defendants, a sports bar and its owner and operator, intercepted, received, and exhibited the program. The defendants charged patrons a $5.00 cover charge and sold food and alcohol.

## **DISCUSSION**

The plaintiff asserts that the defendants have violated both 47 U.S.C. § 553 and 47 U.S.C. § 605. These two statutory schemes provide relief for the alternate means of reception—cable and satellite, respectively—of the Program. In its Motion for Default Judgment, the plaintiff submitted that it has established liability pursuant to 47 U.S.C. § 605 and 47 U.S.C. § 553; and because the two statutory schemes provide relief for the alternate means by which the Program might have been received (satellite or cable),

the plaintiff elected to proceed under 47 U.S.C. § 605. The plaintiff's election of remedies also extends to its cause of action for conversion, which has been withdrawn.

In electing to pursue damages pursuant to 47 U.S.C. § 605, the plaintiff concedes the split in authority as to the applicability of this section to pirated programming involving cable services -- as opposed to satellite services -- at the delivery point, and it submits that, without the benefit of discovery or an admission by the defendants, it is impossible to conclusively determine whether the Program was broadcast by cable or satellite signal. The Court recognizes that 47 U.S.C. § 605 would be inapplicable if the delivery were by cable; however, given the default, the plaintiff cannot conduct discovery to determine the mode of transmission.

A higher range of damages is available in 47 U.S.C. § 605 than in 47 U.S.C. § 553. Statutory damages under 47 U.S.C. § 605 range from $1,000 to $10,000 for each violation with a $100,000 maximum enhancement for willfulness, while statutory damages under 47 U.S.C. § 553 range from $250 to $10,000 for all violations with a $50,000 maximum enhancement for willfulness. 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii); 47 U.S.C. §§ 553(c)(3)(A)(ii) and 553(c)(3)(B). In any event, in light of the damages awarded herein, the distinction is without a difference in this case. *See Columbia Cable TV Co., Inc. v. McCrary*, 954 F.Supp. 124, 128 (D.S.C. 1996) (noting that, even if 47 U.S.C. § 605 were applicable to cable theft, under the facts of the case, the court would award damages "as close as permissible to the amount awarded under § 553").

Section 605 provides, in pertinent part:

no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall

> divulge or publish the existence, contents, substance purport, effect, or meaning thereof [ ] to [ ] any person other than the addressee, his agent or attorney[.]

47 U.S.C. § 605(a). As noted above, the Court has reviewed the affidavit (ECF No. 11-4) of the plaintiff's investigator, Donna Persinger, who went to the Break Time Sports Bar and Grill, located at 100 Miracle Drive, Anderson, South Carolina 29621, on the evening of July 7, 2012, and observed the Program being aired. The Court finds that the plaintiff has presented evidence sufficient to establish that the defendants "divulged" the program in violation of 47 U.S.C. § 605(a). With regard to remedies, section 605(e)(3)(B) provides as follows:

> (B) The court--
>
> (i)   may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;
>
> (ii)  may award damages as described in subparagraph (C); and
>
> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

The plaintiff also seeks damages, attorneys' fees, and costs.

> Section 605(e)(3)(C) governs the computation of damages:
>
> (C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;
>
> > (I)   the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the

>> violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> (II)  the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.
>
> (ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.
>
> (iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

Here, the plaintiff seeks to recover statutory damages available under 47 U.S.C. § 605(e)(3)(C)(i)(II), rather than actual damages available under 47 U.S.C. § 605(e)(3)(C)(i)(I). Because of the defendants' default, actual damages are difficult to prove as the plaintiff has not been able to conduct discovery concerning, among other things, the defendants' profits from the broadcast of the Program.

According to the private investigator's affidavit, Break Time Sports Bar and Grill has a capacity of approximately 100 patrons and charged a $5.00 cover charge the night of the broadcast. According to Plaintiff's Affidavit in Support of Motion for Default Judgment, the Rate Card shows that, based on said capacity, the charge for the license fee for the Program was $950.00. The plaintiff seeks statutory damages of $10,000, enhanced damages of $100,000, attorneys' fees in the amount of $2,178.75,

and costs in the amount of $1,120.

Courts have used various methods of determining an appropriate amount of statutory damages. Some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost if each had paid the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff. Other courts award a flat amount for a violation. *See J & J Sports Prods., Inc. v. JR'z Neighborhood Sports Grille, Inc.,* 2:09–3141–DCN, 2010 WL 1838432 (D.S.C. April 5, 2010) (noting various methods of calculating statutory damages); *Joe Hand Promotions, Inc. v. Precint Bar–Daxlam, Ltd.,* 3:10–199–CMC, 2010 WL 3420189 (D.S.C. Aug.23, 2010) (noting consideration of licensing fee "and the multiple and net amount necessary to ensure a deterrent effect").

This Court finds that a statutory damages award of $2,850, which is three times the license fee that the defendants should have paid to legally broadcast the Program, is the appropriate amount of statutory damages. This award is within the range of statutory damages that other judges within this district have awarded in similar cases. *See, e.g., Joe Hand Promotions, Inc. v. The Precint Bar–Daxlam, Ltd.,* 3:10–199–CMC, 2010 WL 3420189, *2 & n. 2 (D.S.C. Aug. 23, 2010); *Joe Hand Promotions, Inc. v. Jimmagan's Inlet, Inc.,* 4:10–801–TLW–SVH, 2010 WL 5141768, *2 (D.S.C. Oct. 1, 2010; *Joe Hand Promotions, Inc. v. Scott's End Zone, Inc.,* 759 F.Supp.2d 742, 748 (D.S.C. 2010); *Joe Hand Promotions, Inc. v. KJ'z Wings & Ale, LLC*, 0:14-CV-02868-JMC, 2015 WL 1549105, at *2 (D.S.C. Apr. 8, 2015); *Joe Hand Promotions, Inc. v. Upstate Recreation*, CIV.A. 6:13-2467-TMC, 2015 WL 685461, at *8 (D.S.C. Feb. 18,

2015); *Joe Hand Promotions, Inc. v. Double Down Ent., LLC*, 0:11-CV-02438-MBS, 2014 WL 994382, at *7 (D.S.C. Mar. 13, 2014).  When combined with the enhanced damages and attorneys' fees, discussed below, the Court finds that the damages awarded in this case are a sufficient deterrent of similar future conduct.

Section 605(e)(3)(C)(ii) allows for enhanced damages in addition to statutory damages when the violation is committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e) (3)(C)(ii).  The plaintiff claims that Defendants willfully violated 47 U.S.C. § 605(a) for financial gain and seeks enhanced damages of $100,000, asserting that Defendants intentionally intercepted and showed the Program for financial gain or commercial advantage and that the defendants directly or indirectly committed wrongful acts and cannot hide behind a corporate shield.  The statute permits the court, in its discretion, to increase damages by up to $100,000 per violation when the violation is "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]" 47 U.S.C. § 605(e)(3)(C)(ii).  In addition to the plaintiff's pleadings regarding the defendants' intentional acts, the plaintiff, in its affidavit in support of the motion for default judgment, asserted that the Program could not have been "mistakenly, innocently or accidentally intercepted."  Although the court finds that the defendants' violations were intentional and willful and agrees that more than nominal damages should be awarded to deter future violations, the court does not approve the maximum of statutory enhanced damages, and it concludes that enhanced damages in the amount of $5,700.00 (in addition to the $2,850.00 award discussed above and the award of attorneys' fees and costs discussed below) should be granted.

Finally, the plaintiff seeks attorneys' fees under 47 U.S.C. § 605(e) (3)(B)(iii), which states that the court "shall" award attorney's fees and costs.  In determining what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar fee), the court must consider the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awarded in similar cases. *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978); *Jackson v. Estelle's Place, LLC,* No. 09–1700–2010 WL 3190697, *4 (4th Cir. Aug. 12, 2010).  A number of the factors may not be applicable in a particular case and, thus, need not be strictly applied. *See E.E.O.C. v. Service News Co.,* 898 F.2d 958, 965 (4th Cir.1990).

In support of its requests for attorneys' fees and costs, the plaintiff has submitted the declarations of its South Carolina counsel and its California counsel.  The plaintiff seeks attorney's fees in the amount of $2,178.75.  After considering the factors set forth in the foregoing discussion and the declaration of the plaintiff's counsel, the Court finds that the requested fee is reasonable and appropriate.  Accordingly, the plaintiff is awarded attorneys' fees in the amount of $2,178.75.  The Court also finds that the record supports an award of costs in the amount of $1,120.00.

## **CONCLUSION**

For the reasons set forth above, the Court grants the plaintiff's motion for default judgment and awards the plaintiff $2,850.00 in statutory damages, $5,700.00 in enhanced damages, $2,178.75 in attorneys' fees, and $1,120.00 in costs, for a total award of $11,848.75. The defendants are jointly and severally liable for these damages.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks<br>United States District Judge

August 25, 2015
Greenville, South Carolina